IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Jackie Frasier, | ) | C.A. No. 8:08-356-HMH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION & ORDER** |
| vs. | ) | |
| | ) | |
| Verizon Wireless, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Verizon Wireless's ("Defendant" or "Verizon") motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the court grants in part and denies in part the Defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to June 7, 2007, Jackie Frasier ("Plaintiff") had been employed by the Defendant for approximately fourteen years. (Compl. ¶ 3.) The Plaintiff alleges that on May 22, 2007, she was suffering from some marital and/or emotional problems and confided in one of her superiors at Verizon, Iris Wright-Johnson ("Johnson"). (Id. ¶ 4.) As a result of this conversation, the Plaintiff submits that Johnson, acting as an agent of the Defendant, wrongfully instigated the Plaintiff's involuntary commitment to a psychiatric hospital. (Id. ¶ 5.) Further, the Plaintiff claims that she was falsely imprisoned in the hospital until May 30, 2007, and that during her confinement, other Verizon employees who were also hospitalized there recognized the Plaintiff, causing her great humiliation and embarrassment. (Id. ¶ 6.) Finally, according to the Plaintiff,

1

the Defendant discharged her on June 7, 2007, based "on the false ground of 'self admission of being under the influences of illegal substances while at work.'"  (Id. ¶ 11.)

Based on the above allegations, the Plaintiff claims that the Defendant violated the terms of its "Code of Conduct" ("Code").  (Compl. ¶ 12.)  Accordingly, the Plaintiff has brought claims against the Defendant for breach of contract, breach of contract accompanied by a fraudulent act, false imprisonment, invasion of privacy, and defamation.  (Id., generally.)

The Plaintiff filed the instant action on December 31, 2007, and the Defendant removed the case to this court on February 1, 2008.  On February 15, 2008, the Defendant filed the instant motion to dismiss, and the Plaintiff responded on March 4, 2008.  The Defendant replied on March 11, 2008.

## II. DISCUSSION OF LAW

### 1. Rule 12(b)(6)

In federal court, a claimant must make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal of a complaint for failure to state a claim is proper "only if it can be said that on the claim as pleaded the claimant can prove no set of facts that would entitle [him] to relief." Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995).  Furthermore, the court must treat the factual allegations of the nonmoving party as true.  See Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994).

## 2.  Breach of Contract and Breach of Contract
## Accompanied by a Fraudulent Act Claims

The Defendant alleges that the Plaintiff's breach of contract and breach of contract accompanied by a fraudulent act claims fail because the Plaintiff was an at-will employee. (Def.'s Mem. Supp. Mot. Dismiss 3-8.)  "At-will employment is generally terminable by either party at any time, for any reason or for no reason at all." Small v. Springs Indus., Inc., 388 S.E.2d 808, 810 (S.C. 1990).  "The general rule is that termination of an at-will employee normally does not give rise to a cause of action for breach of contract." Conner v. City of Forest Acres, 560 S.E.2d 606, 610 (S.C. 2002).  "However, where the at-will status of the employee is altered by the terms of an employee handbook, an employer's discharge of an employee may give rise to a cause of action for wrongful discharge." Id.  An employee "handbook forms an employment contract when: (1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer." Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C. Ct. App. 2006).

The Plaintiff argues that her at-will employment relationship was altered by the following provisions in the Code.

- This Code sets forth policies and practices regarding the conduct of all Verizon Wireless Employees.  You are required to comply with this Code as a condition of your employment.
- At Verizon Wireless, everyone should feel comfortable to speak his or her mind . . . .
- Verizon Wireless prohibits retaliation against employees who, in good faith, submit or participate in the investigation of any complaints.
- Verizon Wireless employees are required to treat fellow employees . . . with respect, dignity, honesty and fairness.

3

- Verizon Wireless acquires and retains personal information about its employees in the normal course of operations, such as for employee identification purposes and provision of employee benefits. . . . You should never access, obtain, or disclose another employee's personal information to persons inside or outside Verizon Wireless unless you have proper approval and are acting for legitimate business purposes and in accordance with applicable laws and company policies.

(Compl. ¶¶ 8-9.) On the first page of the Code following the table of contents, the Code contains the following disclaimer in bold print and italics:

> This Code sets forth policies and practices regarding the conduct of all Verizon Wireless employees. You are required to comply with this Code as a condition of your employment. This document does not provide you with any guarantee of continued employment at Verizon Wireless. Unless covered by express written employment agreement, all employees of Verizon Wireless are employed on an "at will" basis. This means you or Verizon Wireless can end the employment relationship at any time with or without cause, and without prior notice, for any reason not prohibited by law. This Code may be unilaterally modified by Verizon Wireless at any time.

(Id. Ex. A (Code 1).)

The court finds that the Code did not alter the Plaintiff's at-will employment status. The provisions of the Code submitted by the Plaintiff are general policy statements of the Defendant. "To be enforceable in contract, general policy statements must be definitive in nature, promising specific treatment in specific situations." Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005). The Defendant's promises that "everyone should feel comfortable to speak his or her mind" and that "Verizon Wireless prohibits retaliation against employees who, in good faith, submit or participate in the investigation of any complaints" "do[] not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated." (Compl. Ex. A (Code 2-3)); King v. Marriott Int'l, Inc., 520 F. Supp. 2d 748, 756 (D.S.C. 2007) (finding that the defendant's promise "that 'there will be no

discrimination or recrimination' against an employee who asserts a complaint against the Company" was insufficient to alter the employee's at-will employment status); see also Hessenthaler, 616 S.E.2d at 698 ("Unlike a mandatory, progressive discipline procedure, a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired."). Therefore, the provisions in the Code submitted by the Plaintiff are legally insufficient to create a contract, and the Plaintiff's claims for breach of contract and breach of contract accompanied by a fraudulent act must fail.[1] Based on the foregoing, the Defendant's motion to dismiss the Plaintiff's claims for breach of contract and breach of contract accompanied by a fraudulent act is granted.

### 3. Exclusivity Provision of the South Carolina Workers' Compensation Statute

The Defendant moves to dismiss the Plaintiff's claims for false imprisonment and invasion of privacy on the ground that these claims are barred as a matter of law pursuant to the South Carolina Workers' Compensation Act's exclusivity provision. (Def.'s Mem. Supp. Mot. Dismiss 8-9.) This provision provides: "The rights and remedies granted in this Title to an employee . . . shall exclude all other rights and remedies of such employee . . . ." S.C. Code Ann. § 42-1-540 (1985). Thus, "[r]ecovery under the Act is the exclusive means of settling personal injury claims which come under the Act." Loges v. Mack Trucks, Inc., 417 S.E.2d

---

[1] The Plaintiff appears to assert her termination of employment as the basis for her breach of contract claim. However, to the extent she bases her claim on other actions taken by Verizon Wireless, the court finds that all of the provisions submitted by the Plaintiff in support of her breach of contract claims are merely general policy statements and thus insufficient to support her claims.

538, 540 (S.C. 1992). "However, only other actions arising from personal injury or death are barred." Id. Accordingly, in Dockins v. Ingles Markets, Inc., the South Carolina Supreme Court held that an employee's tort action for slander was not barred by the exclusivity provision because "the gravamen of a defamation action . . . is injury to the reputation." 411 S.E.2d 437, 438 (S.C. 1991), overruled on other grounds by Sabb v. S.C. State Univ., 567 S.E.2d 231, 234 n.2 (S.C. 2002). Although the South Carolina Supreme Court has not ruled on the issue regarding claims of invasion of privacy and false imprisonment, other jurisdictions have included these claims among those harms which do not qualify as compensable injuries under a state's Worker's Compensation Act. See, e.g., Battista v. Chrysler Corp., 454 A.2d 286, 289 (Del. Super. Ct. 1982). Therefore, the court finds that the Plaintiff's invasion of privacy and false imprisonment claims are not barred by the exclusivity provision of the South Carolina Worker's Compensation Act.

### 4. False Imprisonment

In addition, the Defendant moves to dismiss the Plaintiff's false imprisonment claim because the Defendant claims that the Plaintiff has not alleged that she was restrained by the Defendant. (Def.'s Mem. Supp. Mot. Dismiss 9-10.) "To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." Law v. S.C. Dep't of Corr., 629 S.E.2d 642, 651 (S.C. 2006). However, "[t]he charge of false imprisonment is not confined to the party who unlawfully seizes or restrains another, but it likewise extends to any person who may cause, instigate or procure an unlawful arrest." Wingate v. Postal Tel. & Cable Co., 30 S.E.2d 307 (S.C. 1944). In her complaint, the Plaintiff alleges that the Defendant "wrongfully,

gross negligently, willfully, wrongfully, illegally, maliciously and/or without justification instigated Plaintiff's involuntary commitment to a psychiatric hospital against Plaintiff's will and desires . . . ." (Compl. ¶ 5.) Although the Defendant points out that this would be a legal impossibility, the court is constrained at this stage to accept the Plaintiff's allegations as true. Therefore, because the Plaintiff has alleged facts which, if true, would support a claim for false imprisonment, the court denies the Defendant's motion to dismiss the Plaintiff's false imprisonment claim.

### 5. Invasion of Privacy

The Defendant moves to dismiss the Plaintiff's invasion of privacy claim on the grounds that the Plaintiff has failed to allege that the Defendant publicized any private information about the Plaintiff or that any alleged disclosure was highly offensive and likely to cause serious mental injury to a person of ordinary sensibilities. (Def.'s Mem. Supp. Mot. Dismiss 10-11.) "In South Carolina, three separate and distinct causes of action can arise under the rubric of invasion of privacy: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs." Snakenberg v. Hartford Cas. Ins. Co., 383 S.E.2d 2, 5 (S.C. Ct. App. 1989). In the second cause of action, which is raised by the Plaintiff in the instant case,

> [t]he gravamen of the tort is publicity as opposed to mere publication. The defendant must intentionally disclose facts in which there is no legitimate public interest – there is no right of privacy in public matters. Additionally, the disclosure must be such as would be highly offensive and likely to cause serious mental injury to a person of ordinary sensibilities.

Id. at 6.

In her complaint, the Plaintiff alleges that the Defendant "disclos[ed] Plaintiff's personal information to others at the psychiatric hospital" and that "the Defendant expressly or by implication gave Plaintiff's fellow employees and/or others the impression that Plaintiff was engaging in wrongful activity in the workplace." (Compl. ¶¶ 12, 23.)  Based on these allegations, it cannot be said that the Plaintiff could prove no set of facts which would give rise to a claim for invasion of privacy.  Therefore, at this stage, the court is constrained to deny the Defendant's motion to dismiss the Plaintiff's invasion of privacy claim.

### 6. Defamation

Finally, the Defendant moves to dismiss the Plaintiff's defamation claim on the ground that the Plaintiff fails to allege facts that would support any of the four elements of a defamation cause of action.  (Def.'s Mem. Supp. Mot. Dismiss 11-13.)  To establish a prima facie case of defamation, the Plaintiff must prove: "(1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  Boone v. Sunbelt Newspapers, Inc., 556 S.E.2d 732, 737 (S.C. Ct. App. 2001).

The Defendant contends that the Plaintiff's complaint fails to allege the non-privileged publication of a defamatory statement by the Defendant.  (Def.'s Mem. Supp. Mot. Dismiss 12.)  However, "[a]lthough slander is generally a spoken defamation, the [South Carolina] [S]upreme [C]ourt has established that a defamatory insinuation may not only be made by word, but also by actions or conduct."  Lynch v. Toys "R" Us-Del., Inc., 654 S.E.2d 541, 549 (S.C. Ct. App. 2007) (holding that the circuit court properly denied the defendant's motions for directed verdict and

JNOV when the plaintiff presented evidence that the defendant wrongfully and falsely instigated her public arrest in a retail store).

In her complaint, the Plaintiff alleges that the Defendant wrongfully instigated her involuntary commitment in a psychiatric hospital and that while she was confined, other Verizon employees saw the Plaintiff there, causing her "considerable humiliation and embarrassment." (Compl. ¶¶ 5-6.) In addition, the Plaintiff alleges that the Defendant wrongfully "discharged Plaintiff from her employment with the Defendant on the false ground of 'self admission of being under the influences of illegal substances while at work'" and that "the Defendant expressly or by implication gave Plaintiff's fellow employees and/or others the impression that Plaintiff was engaging in wrongful activity in the workplace." (Id. ¶¶ 11, 23.) Based on these allegations, it cannot be said that the Plaintiff can prove no set of facts to support a claim of defamation. Therefore, the Defendant's motion to dismiss the Plaintiff's defamation claim is denied. Based on the foregoing, the Defendant's motion to dismiss is granted in part and denied in part.

It is therefore

**ORDERED** that the Defendant's motion to dismiss, docket number 6, is granted in part and denied in part.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
March 17, 2008